IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3112-D

| | | |
|---|---|---|
| DWAYNE EDWARD BUCHANAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DOCTOR WESTBURG,[1] | ) | |
| | ) | |
| Defendant. | ) | |

On June 22, 2009, Dwayne Edward Buchanan ("Buchanan" or "plaintiff"), a former[2] state inmate, filed this action against Hyde Correctional Institution physician Milton Westberg, M.D. ("Westberg" or "defendant") pursuant to 42 U.S.C. § 1983 [D.E. 1], along with an application to proceed in forma pauperis [D.E. 2]. On October 20, 2009, the court reviewed the complaint under 28 U.S.C. § 1915(e)(2)(B) and allowed the action to proceed [D.E. 8]. The clerk directed North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's claim [D.E. 9]. On January 15, 2010, NCPLS filed a response to the order of investigation, indicating that it had investigated plaintiff's claim and found that appointment of counsel was not warranted [D.E. 17].

On February 2, 2010, Westberg moved to dismiss the action for failure to prosecute [D.E. 20]. On March 16, 2010, Westberg answered the complaint [D.E. 24]. On May 3, 2010, the court denied as moot Westberg's motion to dismiss [D.E. 27]. On September 1, 2010, Westberg filed a

---

[1] The correct spelling of defendant's name is "Westberg." See Mot. Dismiss 1.

[2] On November 24, 2009, the North Carolina Department of Correction released Buchanan. See N.C. Dep't of Corr. Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0915218 (last visited Apr. 26, 2011).

motion for summary judgment [D.E. 31], along with an affidavit, records of Buchanan's sick-call appointment requests, and Buchanan's medical records [D.E. 32]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Buchanan about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 34]. Buchanan did not respond to the motion for summary judgment, and the time within which to do so has expired. As explained below, defendant's motion for summary judgment [D.E. 31] is granted.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

2

In the light most favorable to plaintiff, the facts are as follows. Buchanan's complaint challenges the medical care provided to him after he was injured during his transport[3] on May 16, 2008, from Guilford County Jail into the custody of the North Carolina Department of Correction ("DOC"), at Craven Correctional Institution ("Craven"). Compl. ¶ IV. Buchanan was transferred from Craven to Hyde Correctional Institution ("HCI") on June 5, 2008, where Westberg was his physician. Westberg Aff. ¶ 4.

On May 20, 2008, a physician at Craven ordered blood work which "c[a]me back showing ... kidney damage caused by the accident," but Buchanan did not know about the results of the blood work until May 25, 2009, after he was transferred from Hyde to Caledonia Correctional Institution. Compl. ¶ IV. Buchanan alleges he requested "an M.R.I. . . . or X-Ray to find out the extent of [his] injuries," but Westberg "continue[d] to den[]y . . . any future treatment." Id.

At Craven, Buchanan submitted a sick call appointment request on May 17, 2008, describing injury to his "back and side . . . on the way here from . . . Guilford County Jail on the transportation van" as a result of "being tossed from side to side, by sudden stops." Westberg Aff., Ex. D. On May 19, 2008, a nurse and nurse practitioner examined Buchanan at Craven, prescribed a course of pain medication and muscle relaxant for one month, and scheduled a follow up appointment. Id. ¶ 7 & Exs. C–D. On May 20, 2008, Craven nurses performed a CBC (complete blood count), comprehensive metabolic panel, urinalysis and lipid panel. Id. ¶ 8 & Exs. C, E. On May 22, 2008, the nurse practitioner re-examined Buchanan, who reported improvement in his pain, and demonstrated improvement on physical examination. Id., Ex. F. The nurse practitioner gave

---

[3] Although Buchanan has a medical history of several health problems, see Westberg Aff. ¶¶ 6 (noting high blood pressure and cracked feet), 9 (noting angina/chest pain), it appears his complaint challenges only the treatment provided him for his back and the failure to inform him of his blood-work results. Compl. ¶ IV; see also Mem. Supp. Mot. Dismiss 1.

3

Buchanan a normal activity rating with no restrictions. Id. ¶ 9 & Ex. F. On June 2, 2008, Buchanan submitted a sick call appointment request, stating that his back was "still irritating [him]" and requesting pain medication. Id. ¶ 11 & Ex. H. However, Buchanan did not present for his June 4, 2008 appointment. Id.

On June 5, 2008, DOC transferred Buchanan to HCI (where Westberg provided him with medical care) and HCI medical personnel performed a standard intake screening, noting his ongoing treatment for hypertension and back pain. Westberg Aff. ¶ 13 & Ex. J. On the same day, Buchanan submitted a sick call appointment request asking to "please get something for back pain." Id. ¶ 13 & Ex. J. HCI received the sick call appointment request on June 9, 2008. Id., Ex. J. On June 11, 2008, a nurse at HCI examined Buchanan and prescribed an analgesic balm and ibuprofen, and referred Buchanan to Westberg for examination. Westberg Aff. ¶¶ 4–5, 12 & Ex. I.

On June 16, 2008, Westberg examined Buchanan to evaluate his back pain and hypertension. Westberg Aff. ¶ 14 & Ex. K. Westberg prescribed extra-strength Tylenol for three months for his back pain, and a course of treatment for his hypertension, including medication, weekly blood pressure checks, and a special diet. Id. Westberg also ordered a review in two months and asked the HCI yard officers to observe Buchanan for signs of back pain. Id. On June 19, 2008, Buchanan submitted two sick call appointment requests: one regarding weight loss from his prescribed diet, and one stating his "pain is severe." Id. ¶¶ 15, 17 & Ex. L–M. As for his diet, Buchanan was seen by a nurse on June 20, 2008, and on June 23, 2008, Westberg reviewed Buchanan's medical records and ordered a nutritional consultation. Id. ¶ 15 & Ex. L. As for his back pain, a nurse examined Buchanan on June 25, 2008, and prescribed an analgesic balm and counseled Buchanan on back care. Id. ¶ 17 & Ex. M. Westberg examined Buchanan on June 30, 2008, and instructed Buchanan on exercises to alleviate the pain and provided him with handouts on pain. Id. ¶ 18 & Ex. K.

On July 1, 2008, Buchanan submitted a sick call appointment request stating that he could not lift or do any work because of his back injury. Westberg Aff. ¶ 19 & Ex. N. The triage nurse submitted Buchanan's chart to Westberg for review. Id. On July 8, 2008, Buchanan submitted a sick call appointment request seeking to be excused from work due to his back injury and requesting ibuprofen rather than Tylenol. Id. ¶ 20 & Ex. O. Buchanan was scheduled to see Westberg the next week. Id. Westberg examined Buchanan on July 14, 2008, and did not find reason to restrict Buchanan's activity level, but did change his prescription from Tylenol to ibuprofen for three months. Id. ¶ 21 & Exs. K, P. Westberg again asked the HCI yard officers to observe Buchanan for signs of back pain. Id.

On July 21, 2008, two HCI correctional officers informed Westberg that they had been observing Buchanan's activities, Buchanan did not appear to be in pain, and he had been observed lifting weights. Westberg Aff. ¶ 22 & Ex. P. On July 25, 2008, Buchanan submitted a sick call appointment request asking to be seen for his "medical condition." Id., Ex. Q. On July 30, 2008, Buchanan was seen by the triage nurse, who noted that Buchanan wanted to be excused from working on the road squad. Id. The nurse informed him that his activity level was considered normal. Id. On July 30 and August 4, 2008, Buchanan submitted sick call appointment requests describing back and right leg pain. Id. ¶ 24 & Ex. R. He was seen by a triage nurse on August 7, 2008, who prescribed ibuprofen and referred Buchanan to Westberg. Id.

Westberg examined Buchanan on August 11, 2008, and found that Buchanan "acted as if he was malingering with his back pain complaints." Westberg Aff. ¶ 25 & Ex. P. Westberg educated Buchanan again on back exercises and continued him on ibuprofen. Id. However, Westberg noted that Buchanan's blood pressure was high, and ordered checks of Buchanan's blood pressure. Id. On August 18, 2008, Westberg reviewed Buchanan's blood pressure checks and

5

prescribed a regimen of blood pressure medications. Id. ¶ 26 & Ex. P. On August 18 and 22, 2008, Buchanan submitted sick call appointment requests regarding his back pain and requested a steroid shot "because the medication its taking a slow process." Id. ¶ 27 & Ex. S. Buchanan was seen by a triage nurse on August 26, 2008, prescribed analgesic balm and ibuprofen, instructed Buchanan to continue with his exercises, and referred him to Westberg for further evaluation. Id.

On September 16, 2008, Buchanan submitted a sick call appointment request for back and chest pain, and a triage nurse examined him on September 18, 2008. The triage nurse observed no signs of acute distress and referred him to Westberg for further evaluation. Westberg Aff. ¶ 28 & Ex. T. Westberg examined Buchanan on September 22, 2008, and assessed Buchanan as having "anxiety with somatic disorder." Id. ¶ 29 & Ex. U. On October 31, 2008, Buchanan submitted a sick call appointment request seeking ibuprofen for continuing back pain. Id. ¶ 30 & Ex. V. A triage nurse examined him on November 5, 2008, and referred Buchanan's medical record to Westberg, who on November 10, 2008, continued Buchanan's treatment with ibuprofen for six months. Id. On November 14, 2008, Buchanan submitted a sick call appointment request asking that his bottom bunk assignment be renewed because of his back pain. Id. ¶ 31 & Ex. W. On November 20, 2008, a triage nurse examined Buchanan and referred his medical record to Westberg for review. Id. Westberg reviewed the request for a bottom bunk slip on November 24, 2008, but did not write an order. Id.

On December 10, 2008, Buchanan submitted a sick call appointment request seeking a bottom bunk assignment due to his back pain. Westberg Aff. ¶ 32 & Ex. X. A triage nurse examined Buchanan on December 29, 2008, and referred him to Westberg for further evaluation. Id. On December 29, 2008, Westberg examined Buchanan regarding his request for a bottom bunk assignment, and noted that his activity ratings were all normal and "that he was a healthy young male

6

without any indications of back pain problems." Id., Ex. V. Westberg "indicated that there was no medical indication for [a bottom bunk assignment.]" Id. Buchanan and Westberg also discussed Buchanan's diet, and Westberg referred Buchanan for a nutritional consult. Id. On January 8, 2009, a dietician met with Buchanan, evaluated his diet, and put him on a diet and exercise plan due to weight gain. Id. ¶ 33 & Ex. X.

On February 5, 2009, Buchanan requested a bland diet and a cane due to his back pain, and stated that he would sometimes lose his balance and fall due to his back pain. Westberg Aff. ¶ 34 & Ex. Y. A triage nurse examined Buchanan on February 6, 2009, and referred him to Westberg for further evaluation. Id. On February 17, 2009, Buchanan submitted a sick call appointment request related to his back pain and medications, but he failed to show up at the medical clinic for his scheduled appointment. Id. ¶ 35 & Ex. Z.

On March 5, 2009, Buchanan submitted a sick call appointment request seeking a bottom bunk assignment due to his back pain, and reporting that he felt weak on the right side and was having chest pain and pain in his back. Westberg Aff. ¶ 36 & Ex. AA. A triage nurse examined Buchanan on March 6, 2009, found no signs of acute distress, and referred Buchanan to Westberg for further evaluation. Id. On March 9, 2009, Westberg examined Buchanan, found his gait, reflexes, and neurological exam all to be within normal limits, and did not see any signs of muscle atrophy. Id. ¶ 36 & Ex. U. Westberg observed that Buchanan's blood pressure was high, and he ordered continuation of Buchanan's blood pressure medication and blood pressure checks twice a week for two months. Id. Westberg also referred Buchanan for a mental health evaluation. Id.

On May 4, 2009, Buchanan submitted a sick call appointment related to his back pain and medication, but he failed to show up at the medical clinic for his scheduled appointment. Westberg Aff. ¶ 35 & Ex. Z. On May 8, 2009, Buchanan submitted a sick call appointment request seeking

7

continuation of his pain medication related to his back injury. Id. ¶ 38 & Ex. BB. On May 13, 2009, a triage nurse evaluated Buchanan, gave him ibuprofen and referred him to Westberg for further evaluation. Id. On May 18, 2009, Westberg examined Buchanan regarding his request for continuation of pain medication, and noted that his blood pressure remained high. Id. Westberg discontinued Buchanan's ibuprofen and ordered a regimen of blood pressure medication, a nutritional consult, and biweekly blood pressure checks. Id. DOC transferred Buchanan from HCI to Caledonia Correctional Institution on May 19, 2009. Id. ¶ 39 & Ex. B.

II.

To prevail, Buchanan must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to prove such a claim, Buchanan "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104); Holly v. Scott, 434 F.3d 287, 298 (4th Cir. 2006). Moreover, a prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

As for his ongoing back pain, Buchanan has not shown that Westberg acted with deliberate indifference to a serious medical need. Indeed, Westberg, along with other HCI medical staff, made numerous attempts to treat his back pain. Even though the treatment apparently did not succeed to Buchanan's satisfaction, it does not reflect a constitutional violation in the quality of his medical care. See, e.g., Starling v. United States, 664 F. Supp. 2d 558, 569–70 (D.S.C. 2009). As for Westberg's alleged failure to inform Buchanan of blood work which indicated kidney damage,

8

Westberg is entitled to summary judgment. Notably, in cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. See, e.g., Iko, 535 F.3d at 241–42; Sosebee v. Murphy, 797 F.2d 179, 182–83 (4th Cir. 1986). Buchanan has not demonstrated that Westberg knew of this blood work, which was done at another prison, nor has he shown that he suffered any injury by the delay in being informed of the results of the blood work. Thus, Buchanan has failed to support his claim for deliberate indifference to a serious medical need.

### III.

As explained above, the court GRANTS defendants' motion for summary judgment [D.E. 31]. The Clerk of Court is directed to close the case.

SO ORDERED. This 26 day of April 2011.

JAMES C. DEVER III
United States District Judge